**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

United States of America

    v.                           Criminal No. 10-mj-69-01-LM

Richard Victorino

## ORDER OF DETENTION PENDING TRIAL

Section 3142(f) of the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., "does not authorize a detention hearing whenever the government thinks detention would be desirable, but rather limits such hearings to the [circumstances listed in 18 U.S.C. § 3142(f)(1) and (f)(2)]." United States v. Ploof, 851 F.2d 7, 10 (1st Cir. 1988). In this case, the government invoked § 3142(f)(1)(E), which includes a felony involving a minor that is not otherwise a crime of violence.

The crime charged by complaint, 18 U.S.C. § 1470, which is a felony, alleges that the defendant used a facility of interstate commerce, a cellular telephone network, to knowingly transfer obscene matter to a minor. Thus, the charge being a felony involving a minor victim, the detention hearing was appropriately requested.

In accordance with 18 U.S.C. § 3142(f), a hearing was conducted on August 16, 2010, for the purpose of determining

whether to detain the defendant.  Pursuant to Section 3142(f),
the court must determine whether any condition or combination of
conditions set forth in subsection (c) will reasonably assure the
appearance of the defendant ("risk of flight") and the safety of
any other person and the safety of the community
("dangerousness").  18 U.S.C. § 3142(f); <u>United States v.
Patriarca</u>, 948 F.2d 789, 791 (1st Cir. 1991).  In making this
determination, the court must consider the following: (1) the
nature and circumstances of the offense charged; (2) the weight
of the evidence as to guilt; (3) the history and characteristics
of the accused, including family ties, past history, financial
resources and employment; and (4) the nature and seriousness of
the danger to any person or the community that would be posed by
a release.  18 U.S.C. § 3142(g).

During the course of a hearing conducted pursuant to 18
U.S.C. § 3142, the government has the burden of persuading the
court that no condition or combination of conditions will
reasonably assure (1) the defendant's presence at trial, <u>United
States v. Perez-Franco</u>, 839 F.2d 867, 870 (1st Cir. 1988), or (2)
the safety of another or the community.  <u>Patriarca</u>, 948 F.2d at
793.  For its part, the government is required to offer a
preponderance of the evidence to prove risk of flight and clear

2

and convincing evidence to establish dangerousness.  <u>See</u>
<u>Patriarca</u>, 948 F.2d at 792-93.

In the instant case, by issuing the complaint the court
found probable cause to believe that the offense charged has been
committed and that the defendant has committed it.  For the
reasons stated below, and after considering the factors set forth
in 18 U.S.C. § 3142(g), the court finds that the government has
met its burden to establish that no conditions can reasonably
assure the safety of another or the community.

The "weight of the evidence" to support the government's
case as proffered at the detention hearing was strong and
compelling; in fact, the defendant has admitted he committed the
offense.  Particularly compelling in this case, however, is the
"nature and circumstances of the crime charged" and the fact the
offense involves a minor victim.  The court will summarize the
government's extensive proffer, which it incorporates by
reference herein.  In short, the defendant taught the minor child
as a seventh grader at West Running Brook Middle School in Derry,
New Hampshire, for the 2008-2009 academic year.  On April 13,
2009, the defendant was given a written reprimand for
inappropriate conduct for embracing and kissing the minor victim

on the head in his classroom with no one else present.[1]  At the conclusion of the school year, the defendant accepted a teaching position at a middle school in New York.

Throughout the latter half of 2009 and through August of 2010, the defendant and the minor victim engaged in extensive and continuous text communications.  In sum, and as set forth in much greater detail on the record, over the course of a number of months the communications went from what can be characterized as inappropriately flirtatious with sexual innuendo to sexually graphic with explicit references to desired sexual encounters and attempts to coordinate such an encounter in New Hampshire.  In June of 2010, the defendant convinced the minor to send him two pictures of her naked from the waist up and, in response, he forwarded two pictures of an erect penis.

In late July of 2010 the FBI initiated an undercover

---

[1]This event apparently occurred after the minor victim had ended a dating relationship with another student and was crying in the defendant's classroom. Defendant maintains that this contact was benign and not sexual in nature.  While the court does not take issue with the defendant's characterization of that incident for the purpose of reaching its decision, his characterization of the event as not sexual in nature is certainly questionable given his future interactions with and pursuit of this minor.

4

operation by assuming the minor's cell phone number and texting the defendant.  During this operation the defendant's responsive texts revealed he was suspicious and frequently questioned whether they were truly authored by the minor victim.  In fact, during an FBI non-custodial interview with the defendant on August 12, 2010, he admitted he suspected law enforcement may have been sending the texts.  Nonetheless, despite this suspicion, throughout late July and early August the defendant continued to solicit naked pictures and attempted to arrange a sexual rendezvous with the minor victim.

At the FBI non-custodial interview, the defendant admitted that he had engaged in a sexually inappropriate texting relationship, including the exchange of photos as referenced above and discussions of sexual encounters.  The defendant also outlined a second minor he met while teaching in Derry with whom he had a very similar texting relationship, which also included sexually inappropriate discussions and the exchange of naked photographs.

As a teacher of middle school students for five years, the defendant has held a position of public trust.  He abused that trust and manipulated at least two minor students by engaging in texts that were graphically sexual in content and included the

exchange of nude photographs and attempts to arrange a sexual encounter.  This was not simply a one-time lapse of judgment on one occasion; rather, the defendant repeatedly exchanged sexual texts and photographs with multiple minor victims over a prolonged period of time.  Unlike other child pornography cases cited by the defendant in which conditions of release were set, this also is not merely a case in which the defendant possessed or circulated child pornography.[2]  Rather, it is a case in which the defendant has admitted an ongoing texting relationship with two minors that included the exchange of naked photographs and solicitations of sexual encounters.  Very significantly the defendant persistently pursued these sexual texting relationships after he had received a reprimand for inappropriate conduct and after he suspected law enforcement was monitoring or authoring texts from the minor victim here.  Thus, his desire to pursue these texting relationships with minors was so pervasive that he apparently knowingly risked the loss of his teaching vocation and

---

[2]The court also notes that release decisions are sui generis and decisions in other cases have little to no utility or relevance to future release or detention determinations. Patriarca, 948 F.2d at 794 ("Detention determinations must be made individually and, in the final analysis, must be based on the evidence which is before the court regarding the particular defendant.").

potential incarceration to pursue these minors.

In response to the court's inquiry as to how it could be assured the defendant would not pose a danger to the community given his prolonged and persistent pursuit of these minors even after he thought he was being monitored by law enforcement, defense counsel responded (1) that in 99% of the instances the defendant did not initiate the contact, (2) this was aberrational conduct given his positive relationship with numerous other students over his five year career, and (3) that only an expert can explain why a person with the defendant's background, education, family support and experience would engage in this conduct.  Given the victim's minor status, the first argument requires no response from the court.  As to the second point, the court strongly disagrees that exchanges such as those involved in this case with two minor students over a five year career is a positive record or can be characterized as an aberration. Finally, as to the third point, the court at this stage cannot pause and wait for an expert evaluation to explain both the defendant's conduct and whether he presents a danger to the community; that decision must be made today, and if it takes an expert to explain whether he presents a danger to the community, then the court cannot put the community at risk at this time by

releasing the defendant given the record before it.

Turning to additional factors listed in 18 U.S.C. § 3142(g), the defendant correctly points out that he has no criminal record and that he has a strong relationship with responsible family members who support him, both factors that favor his release on conditions.  It should be noted, however, that the pretrial services report also reflects the defendant smokes marijuana two to five times a week, reflecting a current untreated substance abuse problem.

Given these facts, it is the court's decision that the government has met its burden of establishing that no set of conditions––including prohibiting access to cell phones, computers with internet access and electronic monitoring––can adequately assure the safety of another or the community. Accordingly, it is **ORDERED** that the defendant be detained pending trial.

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel.  On

8

order of a court of the United States or on request of an
attorney for the Government, the person in charge of the
corrections facility shall deliver the defendant to the United
States Marshal for the purpose of an appearance in connection
with a court proceeding.

       **SO ORDERED.**

                                     /s/ Daniel J. Lynch
                                     Daniel J. Lynch
                                     United States Magistrate Judge

Date:  August 18, 2010

cc:  Arnold H. Huftalen, Esq.
     Jessica C. Brown, Esq.
     U.S. Marshal
     U.S. Probation